IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

ALLIANCE FOR THE WILD ROCKIES, and NATIVE ECOSYSTEMS COUNCIL,

Plaintiffs,

vs.

MATT ANDERSON, Supervisor Bitterroot National Forest; TROY HEITHECKER, Acting Regional Forester, U.S. Forest Service Northern Region; U.S., FOREST SERVICE,[1]

Defendants.

CV 24–125-M-KLD

ORDER

This matter comes before the Court on Defendants' Notice of Satisfaction and Motion to lift the Injunction, or in the Alternative to Alter or Amend the Order and Judgment. (Doc. 45). On March 31, 2026, the Court entered an order on the parties' cross-motions for summary judgment. (Doc. 40). The order granted in part and denied in part each of the parties' motions. (Doc. 40 at 59). As such, the Court enjoined Defendants from implementing the Gold Butterfly Project ("Project") on the Bitterroot National Forest and remanded the Project back to the United States Forest Service ("USFS) for further review. (Doc. 40 at 58-59). Defendants now

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current public officers are substituted for their predecessors as named Defendants.

seek relief from that injunction, pursuant to Federal Rules of Civil Procedure 60(b)(5) and 59(e). For the reasons set forth below, the injunction is lifted.

## I. Background

The Project was first authorized in November 2019. (FS011286). As part of the Project's analysis pursuant to the National Environmental Policy Act ("NEPA"), the United States Forest Service ("USFS") issued a revised Final Environmental Impact Statement ("EIS") in October 2019. (FS010455). However, in August 2020, the Forest Supervisor for the Bitterroot National Forest withdrew the Project and instructed USFS staff to conduct additional review and analysis. (FS011286).

USFS then issued a Draft Supplemental EIS in June 2021 and the Final Supplemental EIS and Draft Record of Decision in December 2021. (FS011286). An updated Final Supplemental EIS was issued in February 2023. (FS011286). The Project was again authorized in a Record of Decision, signed in August 2023. (FS011311). In light of new information regarding wolverine and grizzly bears that emerged after the Record of Decision was signed, USFS prepared a Supplemental Information Report ("SIR") in December 2024. (FS084879-5037).

Plaintiffs filed their complaint in this matter on September 9, 2024. (Doc. 1). Subsequently, Plaintiffs filed an amended complaint on November 26, 2024. (Doc. 9). Plaintiffs' amended complaint alleged violations of NEPA, the National Forest

Management Act, and the Healthy Forest Restoration Act. (Doc. 9). The parties thereafter filed cross-motions for summary judgment (Docs. 15, 21) on March 13, 2025 and April 17, 2025, respectively.

On summary judgment, Plaintiffs argued in part that USFS was required to prepare a supplemental EIS in light of significant new information regarding grizzly bears. (Doc. 16 at 35). Plaintiffs highlighted three interrelated factors that they claim necessitated supplemental NEPA analysis: (1) the "confirmed presence of at least three grizzly bears in the Sapphire Mountains," (2) the implementation of an updated U.S. Fish and Wildlife Service ("FWS") map indicating that grizzly bears "may be present" in the Project area, and (3) USFS' changes to the Endangered Species Act ("ESA") effects determination regarding grizzly bears. (Doc. 16 at 36-37).

In response, Defendants countered that USFS had already address the new information cited by Plaintiffs in an SIR and that USFS had reasonably concluded that supplemental NEPA analysis was not required. (Doc. 22 at 40). Reviewing the contents of the SIR, the Court noted that the conclusions regarding grizzly bears in the SIR were based in part on an "inaccurate or contradictory recitation of the contents of the record." (Doc. 40 at 56).

Specifically, the Court noted that while the SIR stated "that the Record of Decision relied on the conclusion that transient grizzly bears may be present in the

Project area" the "Record of Decision indicates otherwise . . . ." (Doc. 40 at 55). Indeed, the Record of Decision indicated that "[t]he selected alternative would have no effect on grizzly bear because the entire project area is outside the latest map of areas where USFWS has determined grizzly bear may be present." (Doc. 40 at 55, quoting FS011306).

The purpose of the SIR in this context was to determine or analyze whether, in light of new information regarding grizzly bears, supplemental NEPA analysis was required. Because USFS' determination that such analysis was not necessary "was premised on apparently inaccurate information," the Court found that the decision not to engage in additional NEPA analysis was arbitrary and capricious. (Doc. 40 at 56). Accordingly, the Court granted partial summary judgment in favor of Plaintiffs on this issue, enjoined Defendants from implementing the Project, and remanded this matter to Defendants. (Doc. 40 at 59). The Court granted summary judgment in favor of Defendants on all other claims. (Doc. 40 at 59).

On April 21, 2026, Defendants filed the instant motion. (Doc. 45). Attached to the brief on the motion, Defendants have included an amended SIR. (Doc. 46-1). As with the original SIR, the amended SIR addresses USFS' "conclusion on whether additional NEPA analysis is required to account for post-decision sightings of transient grizzly bears near the [P]roject area." (Doc. 46-1 at 3). Defendants' motion is fully briefed and ripe for ruling.

## II. Legal Standards

Pursuant to Federal Rule of Civil Procedure 60(b)(5) "the court may relieve a party or its legal representative from a final judgment, order" if "the judgment has been satisfied, released, or discharged . . . or applying it prospectively is no longer equitable . . . ." Rule 60(b)(5) "codifies the court's traditional authority, inherent in the jurisdiction of the chancery, to modify or vacate the prospective effect of their decrees." *Bellevue Manor Assocs. V. United States,* 165 F.3d 1249, 1252 (9th Cir. 1999) (quotation marks and citations omitted).

The party moving for relief from an injunction "must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 393 (1992); *Native Ecosystems Council v. Krueger*, 348 F. Supp. 3d 1065, 1068 (D. Mont. 2018). "It is an abuse of discretion if, after the moving party caries this burden, a court 'refuses to modify an injunction in light of such changes.'" *All. for the Wild Rockies v. Bradford*, 864 F. Supp. 2d 1011, 1017 (D. Mont. 2012), *amended in part*, No. CV 09-160-M-DWM, 2012 WL 12892360 (D. Mont. July 23, 2012) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)).

Federal Rule of Civil Procedure 59(e) establishes that parties may file a "motion to alter or amend a judgment" within 28 days of the entry of judgment.

However, relief under this Rule is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Rule 59(e) provides "a district court the chance 'to rectify its own mistakes in the period immediately following' its decision." *Banister v. Davis*, 590 U.S. 504, 507–08 (2020) (quoting *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 450, (1982)). Motions brought under Rule 59(e) "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

NEPA is a procedural statute requiring government agencies to "take a hard look" at the "environmental consequences" of their actions. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). An agency adequately conducts a "hard look" "by providing a reasonably thorough discussion of the significant aspects of the probable environmental consequences" of a proposed action. *Center for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1194 (9th Cir. 2008) (quoting *Idaho Sporting Cong. v. Thomas*, 137 F.3d 1146, 1149 (9th Cir. 1998)). NEPA "does not mandate particular results," but "prescribes the necessary process" agencies must follow to identify and evaluate "adverse

environmental effects of the proposed action." *Robertson*, 490 U.S. at 350. The court's review is complete if upon review of the record the court is satisfied the agency took a "hard look" at the proposed action's environmental impacts. *Idaho Conservation League v. Mumma*, 965 F.2d 1508, 1519 (9th Cir. 1992). "[T]he central principle of judicial review in NEPA cases is deference." *Seven Cnty. Infrastructure Coalition v. Eagle Cnty., Colorado,* 145 S. Ct. 1497, 1511 (2025).

Courts review agency decisions under NEPA by applying the standard of review set forth in the APA. *Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1238 (9th Cir. 2005). The Rule 56 summary judgment standard is therefore modified in cases requiring review of an administrative record pursuant to the APA; courts are required to uphold agency actions unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,]" or "without observance of procedure required by law." *Center for Biological Diversity*, 868 F.3d at 1057; 5 U.S.C. § 706(2)(A); 5 U.S.C. § 706(2)(D).

The APA standard of review is deferential. A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency action likewise is arbitrary and capricious if the agency fails to articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. *Motor Vehicle Mfrs.*, 463 U.S. at 43. A court may not accept an agency's post hoc rationalizations for its action. *Motor Vehicle Mfrs.*, 463 U.S. at 50. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs.*, 463 U.S. at 50.

## III. Discussion

Defendants' motion rests on two primary arguments. First, Defendants argue that, pursuant to Rule 60, the amended SIR cures the defect noted by the Court on summary judgment. Therefore, Defendants argue, the injunction should be lifted. Second, Defendants argue that, pursuant to Rule 59, the Court errored by failing to consider the requisite factors when enjoining the Project. Therefore, Defendants argue, the injunction was improperly granted to begin with. As to the Rule 60 argument, the Court finds that Defendants have cured the errors that plagued the original SIR and are entitled to relief from the injunction on the Project. The Court therefore does not reach the merits of Defendants' Rule 59 argument.[2]

[2] Furthermore, as Plaintiffs note, Defendants could have raised these arguments at the summary judgment stage, but chose not to do so.

In response to Defendants' Rule 60 argument, Plaintiffs generally contend that the amended SIR does not satisfy USFS' burden to perform supplemental NEPA analysis. Public process is at the heart of NEPA, and it ensures public notice and involvement as well as assures the public that the agency has considered environmental issues and public input in the decision-making process. *Oregon Natural Res. Council v. Devlin*, 776 F. Supp. 1440, 1446 (D. Or. 1991) (citations omitted). "However, the public comment process is not essential every time new information comes to light after a NEPA document is prepared." *Devlin*, 776 F. Supp. at 1446. "Not every new circumstance requires filing a new supplemental environmental impact statement or assessment or reopening a prior decision. An agency may evaluate new information in a supplemental report, without reopening the environmental assessment process for the project at issue." *Devlin*, 776 F. Supp. at 1449 (citing *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360 (1989)).

*Marsh* requires agencies to apply the "rule of reason," which justifies reopening the NEPA process when there "are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." *Marsh*, 490 U.S. at 372. The "significant" new circumstances or information "must present a *seriously* different picture of the environmental impact of the proposed project from what was previously envisioned." *Devlin*, 776 F. Supp. at 1449 (emphasis in original).

It remains well-established that an agency may use an SIR to determine whether new information triggers the need for supplemental NEPA analysis. *See Devlin*, 776 F. Supp. at 1449. Although SIRs are not themselves NEPA documents, "courts have upheld their use 'for the purpose of determining whether new information or changed circumstances require the preparation of a supplemental EA or EIS.'" *All. for Wild Rockies v. Probert,* 412 F. Supp. 3d 1188, 1207 (D. Mont. 2019) (quoting *Idaho Sporting Cong. Inc. v. Alexander*, 222 F.3d 562, 566 (9th Cir. 2000)).

As recited in part above, the procedural history of this case helps clarify some of the contours of this issue. At the summary judgment stage, Plaintiffs argued that three interrelated issues necessitated supplemental NEPA analysis; recent sightings of grizzly bears in the vicinity of the Project, a changed ESA effects determination for the Project, and an updated FWS "may be present map." Defendants' response to this argument highlighted the original SIR, which was part of the administrative record.

On reply, Plaintiffs merely challenged whether, on its face, an SIR could satisfy USFS' duty to complete supplemental NEPA analysis. However, as noted in the Court's order on summary judgment, the precedent cited by Plaintiffs in support of this argument demonstrated only that other Courts have found that the specific facts related to an SIR may render it inadequate. Accordingly, the Court

was "left to determine whether Plaintiffs' opening brief raise[d] any issues related to grizzly bear . . . that are not sufficiently addressed in the SIR." (Doc. 40 at 52-53).

Considering the contents of the SIR, the Court noted an "inaccurate or contradictory recitation of the contents of the record" regarding the presence of bears in the Project area. (Doc. 40 at 56). The SIR effectively stated that the "Record of Decision relied on the conclusion that transient grizzly bears may be present in the Project area." (Doc. 40 at 55). According to the SIR, because USFS had always assumed that grizzly bears may be present, the new information regarding bears was consistent with the agency's prior analysis. However, the SIR's recitation of the Record of Decision was contradicted by the contents of the Record of Decision itself, which states:

> The selected alternative would have no effect on grizzly bear because the entire project area is outside the latest map of areas where USFWS has determined grizzly bear may be present.

(FS011306).

Because this error spoke to the heart of the issue, the Court found that the SIR "as currently drafted" could not sustain Defendants' arguments that no further NEPA analysis is required. (Doc. 40 at 56). Accordingly, Defendants have prepared an amended SIR that, they claim, cures any defects found in the original SIR. The Court agrees.

The amended SIR, which was attached to the instant motion and also apparently posted online for public access, adds significant new explanation, details, and coherence to USFS' determination that supplemental NEPA analysis regarding grizzly bears in the Project area is not necessary. More significantly, it cures the error noted in the original SIR.

The main distinguishing feature of the amended SIR is that, unlike in the original, USFS now makes a clear distinction between its NEPA and ESA analyses. That distinction explains how the new information regarding the presence of grizzly bears is consistent with the agency's NEPA prior analysis, if not the ESA effects analysis that is described in the 2023 Wildlife Report and Final Record of Decision.

Regarding NEPA, the amended SIR describes USFS' approach to grizzly bears in the Project area. For the 2019 Final Environmental Impact Statement, the operative analysis regarding the effects of the Project on grizzly bears was contained in the 2019 Wildlife Report. In 2023, USFS prepared a Final Supplemental EIS, an updated Wildlife Report (the "2023 Wildlife Report"), and the 2023 Record of Decision. (Doc 46-1 at 3-4).

The amended SIR indicates that, as part of the decision-making process that led USFS to select "modified Alternative 2 in the 2023 [Record of Decision]," the agency consulted supporting documentation such as the 2023 Wildlife Report.

(Doc. 46-1 at 4). Further, the amended SIR explains that the analysis in the 2023 Wildlife Report regarding the "direct, indirect, and cumulative effects for grizzly bears" was unchanged from the 2019 Wildlife Report. (Doc. 46-1 at 4). This appears to be consistent with the contents of the 2023 Wildlife Report, which in addressing grizzly bear states "[t]his section remains unchanged from the previous analysis . . . except for the Determination section." (FS022759).

Unlike the original SIR, the amended SIR fully explains that, in the 2019 Wildlife Report and 2023 Wildlife Report, the agency's NEPA analysis is separate from its recitation of the ESA effects determination. (*See* Doc. 46-1 at 4). Accepting that explanation as true, where the 2023 Wildlife Report indicates that the analysis remains the same, the phrase "except for the Determination section" distinguishes the NEPA analysis (which remained unchanged) from the information that follows, which only concerns the ESA. (FS022759).

This interpretation of the two Wildlife Reports requires that the documents be read with the two statutory schemes in mind (NEPA and ESA). As to NEPA, the 2023 Wildlife Report merely states that the analysis did not change from the 2019 Wildlife Report. (FS022759). Understanding the agency's NEPA analysis regarding grizzly bears in 2023 therefore requires recourse to the 2019 Wildlife Report. Significantly, the 2019 report indicates that the agency's analysis assumed the presence of transient bears. "[I]t is highly likely that grizzlies do not currently

occur in the project area, and that any grizzlies that occur there would probably be transient bears." (FS020705).

The amended SIR also explains that, while the agency's NEPA analysis remained consistent as to the presence of transient bears, the ESA effects determination changed over time. The condensed history of those changes begins with the 2018 Biological Assessment, where USFS found that the project was *not likely to adversely affect* grizzly bears. The amended SIR explains that, in 2020, FWS "issued a new process for determining where grizzly bear 'may be present,' including a May be Present map . . . ." (Doc. 46-1 at 5). The 2020 May be Present map did not indicate the presence of grizzly bears in the Project area. Accordingly, in a 2021 letter, USFS informed FWS that USFS had changed the effects determination from *not likely to adversely affect* to *no effect*. (Doc 46-1 at 5). However, in 2023, FWS updated the May be Present map again. This time, the map included a portion of the project area. (Doc 46-1 at 6). Accordingly, USFS prepared an additional biological opinion, reflecting that the Project was again *not likely to adversely affect* grizzly bears. (Doc. 46-1 at 6).

In summary, the ESA effects determination for the Project went from *not likely to adversely affect* in 2018, to *no effect* in 2021, and back to *not likely to adversely affect* in 2024. The first part of that history is generally reflected in the

2023 Wildlife Report as well as the 2023 Record of Decision (FS022759; FS011306).

In light of these timelines, the amended SIR indicates that the NEPA analysis and ESA effects determination were separate processes. Reading the Project documents in this light, statements in the Record of Decision and 2023 Wildlife Report indicating that bears are not present refer only to the ESA effects determination. Further, this reading supports the conclusion that for the purposes of NEPA, USFS has always considered transient grizzly bears in the Project area. Admittedly, this explanation, as advanced in the amended SIR, can be challenging to fully parse. However, USFS' interpretation of its own analysis is now both coherent and fully explained.

In response to Defendants' assertion that the amended SIR cures the defects of the original SIR, Plaintiffs make two primary arguments. First, Plaintiffs argue that the amended SIR is inadequate and does not satisfy NEPA's requirements. Second, Plaintiffs argue that, in seeking relief from the injunction on the Project, Defendants have not satisfied the requirements of Rule 60.

In support of their adequacy argument, Plaintiffs cite to a similar case from the District of Oregon, *Wildlands v. U.S. Forest Serv.*, 791 F. Supp. 2d 979 (D. Or. 2011). In that case, USFS prepared an environmental assessment that misrepresented an ESA effects determination for spotted owl, and later prepared an

SIR that concluded that no additional NEPA analysis was required, in part because the misrepresentation was merely a scrivener's error. The court in that case rejected the conclusions in the SIR, and found that additional NEPA analysis was required. *Wildlands*, 791 F. Supp. 2d at 989-91.

Despite some similarities, this case is ultimately distinguishable from *Wildlands* for the primary reason that, in that case, the NEPA analysis directly depended on the ESA effects determination. "[T]he [not likely to adversely affect] finding in the body of EA clearly was the driving force in the Decision Notice and Finding of No Significant Impact . . . ." *Wildlands*, 791 F. Supp. 2d at 989. In contrast, this matter involves an ESA effects determination that, while explained in the Project NEPA documents, operated apart from the NEPA analysis and conclusions. The Court is therefore unpersuaded by Plaintiffs' analogy to *Wildlands*.

Plaintiffs further question the sufficiency of the SIR, stating that the public has still been presented with inaccurate information regarding the Project. "It is an abuse of discretion for the agency to admit that the SEIS gave the wrong effects conclusion to the public, and nonetheless refuse to prepare a supplemental EIS to correct this error." (Doc. 55 at 14). However, beyond *Wildlands*, Plaintiffs provide no citation to caselaw to support the proposition that, even where the NEPA analysis for a species is sufficient under NEPA, a subsequently changed ESA

effects determination automatically triggers the need for additional NEPA analysis. Indeed, such a rule seems to contradict existing caselaw regarding the interplay between NEPA and ESA consultation. *See All. for Wild Rockies v. Probert*, 412 F. Supp. 3d at 1208 ("Nor does the requirement for reinitiation under the ESA necessarily mandate supplemental NEPA analysis.").

Based on the specific facts of this case and the documents in the Record, the Court finds that the amended SIR cures the errors in the original SIR, and satisfies Defendants' obligations under NEPA.

Regarding the Rule 60 standard, Plaintiffs argue that there has been no significant change sufficient to justify revisiting the terms of the injunction. "Here, Rule 60(b) relief is not warranted because there has been no meaningful change, much less a significant change." (Doc. 55 at 19-20). Plaintiffs specifically argue that Defendants, in briefing and the amended SIR, are presenting arguments that have already been raised. Plaintiffs highlight a number of decisions for the proposition that the Rule 60(b) standard is not met where the motion is premised on arguments the court has already addressed. *See Maraziti v. Thorpe,* 52 F.3d 252, 255 (9th Cir. 1995); *Glacier Elec. Co-op Inc. v. Gervais,* 2015 WL 5437615, at *4 (D. Mont. 2015).

Whether or not much information in the amended SIR echoes the contents of the original SIR, the amended SIR is nevertheless a new document. Moreover, it

explains the agency's analysis in a different way. Instead of the blanket statement that the Record of Decision and similar analysis had always presumed the presence of transient bears, the amended SIR clarifies the interplay between the Project's NEPA and ESA analysis. In other words, the agency has shown its work. The Court therefore finds that Defendants have gone beyond repeating prior arguments and have shown the requisite significant change in circumstances to merit relief under Rule 60(b).

**IV. Conclusion**

For the reasons stated above, IT IS ORDERED that Defendants' motion to lift the injunction (Doc. 45) is GRANTED. The injunction on the Project is LIFTED.

DATED this 21st day of August, 2026.

Kathleen L. DeSoto
United States Magistrate Judge